Filed 3/25/26  In re B.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re B.A., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.C., <br><br> Defendant and Appellant. | D086948 <br><br> (Super. Ct. No. J521621) |

APPEAL from an order of the Superior Court of San Diego County, Daniela A. Reali, Judge.  Reversed and remanded with directions.

Caitlin E. Howard, under appointment by the Court of Appeal, for Defendant and Appellant.

Damon Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

T.C. (Father), the noncustodial parent of B.A., appeals from the juvenile court's dispositional order denying him placement of B.A. under

Welfare and Institutions Code,[1] section 361.2, subdivision (a). This subdivision requires the court to place a dependent child in the care of a noncustodial parent unless it finds that placement would be detrimental to the child's well-being. (§ 361.2, subd. (a).) Father argues no substantial evidence supports the court's detriment finding. We agree. We reverse the September 5, 2025, disposition order and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Referral and petition under section 300*

B.A. came to the attention of San Diego County Health and Human Services Agency (Agency) after K.A (Mother) gave birth to B.A. in May 2025,[2] and Mother and baby tested positive for amphetamines and multiple illegal substances. Mother denied receiving prenatal care but visited the hospital at least twice during the pregnancy, where she tested positive for illegal drugs. While mother admitted past drug use, she denied current use, claiming she was drugged involuntarily. Father and Mother have two older children together, ages four and nine, and Father has legal and physical custody of both due to Mother's absence and substance abuse. Mother, who is homeless and recently hospitalized for schizophrenia, has supervised visits with the older children about once a month. Father visited B.A. at the hospital but remained unsure of whether he was the child's biological parent. As a result, Father did not continue visiting B.A.

In May, the Agency filed a petition under section 300, subdivision (b)(1) on behalf of B.A., alleging B.A. has suffered, or there was a substantial risk

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

[2] All dates herein are for the year 2025, unless otherwise specified.

he would suffer serious physical harm or illness if he remained in Mother's care.  The Agency based its petition on B.A.'s and Mother's positive drug tests and Mother's history of drug abuse, including sibling Ky.A.'s positive test for opiates at birth in 2020, and the fact that none of Mother's children were in her care due to her substance abuse.

B. *Detention hearing and Agency addendum report*

Father, but not Mother, attended B.A.'s May 29 detention hearing.  At the time of the hearing, Father had only alleged-Father status. At Father's request the court ordered both genetic testing for Father, and that the Agency treat Father as a biological parent for purposes of visitation or voluntary services.  Father was unable to take custody then, and the court found no relative or noncustodial parent willing to care for B.A.  The court ordered B.A. detained from Mother in out-of-home care, finding Mother's "home is contrary to the child's welfare and there is a substantial danger to the physical health of the child and no reasonable means by which the child's physical or emotional health may be protected without removing the child from the [Mother's] home or custody."

Early in June, Father attended an initial visit with B.A. at the Agency's central office.  On June 12, Father said he wanted to wait for genetic testing results before discussing services.  Father then did not respond to an Agency social worker's text message or make himself available for a full interview.  Father missed two or three scheduled visitations in June.

On July 22, Father learned he was B.A.'s biological parent.  At the initial jurisdiction and disposition hearing, the court elevated Father from alleged-father status to presumed-father status.  On August 26, he visited B.A.

3

In a meeting with an Agency social worker, Father reported that due to an addiction to prescribed medication he attended a methadone clinic for the last three months where he was drug tested twice weekly. He stated his last "dirty" test was two months prior. Father agreed to take parenting classes, sign a release of information form for his treatment facility, take drug tests, allow a home walk-through, and attend child visitations. The next day, Father did not show up for his scheduled drug test.

At a home visit on September 3, Father informed the social worker he wanted to have B.A. in his care and had the support of the paternal grandmother and paternal uncle, with whom he lived. He stated he would protect B.A., continue attending his substance abuse programs, not allow Mother to be under the influence around the children and him, and rely on his family for support and accountability. Father's home was neat and clean, with no safety hazards reported. Paternal uncle reported that Father was attentive and honest; that he had no concerns about Father's ability to care for and protect B.A.; and that he was willing to help and would not allow Father or Mother or anyone else under the influence to care for B.A. Paternal uncle denied that Father brought drugs into the home. Paternal grandmother reported Father was a good father, attended his treatment program, was staying sober, and had her full support.

C. *Contested jurisdiction and disposition hearing*

At the September 5 hearing, the juvenile court found jurisdiction, sustained the petition, and removed B.A. from Mother's custody. Father requested placement under section 361.2, arguing the Agency failed to meet its burden to show detriment. Father claimed he was forthcoming with the social worker about his challenges, attended a child and family teams meeting, began visiting B.A. once paternity was established, participated in a

4

drug treatment program, cared for two dependent children living in his home, and had familial support from relatives.  The court, however, found that placement with Father would be detrimental to B.A.  "Part of" the evidence on which the court relied were the missed drug test, Father's admission that he tested positive two months earlier, and the lack of information on Father's ongoing drug testing.[3]  (See § 361.2.)  Mother did not appeal the court's jurisdiction finding.

DISCUSSION

Father contends no substantial evidence supports the finding under section 361.2 that placing B.A. in his custody would be detrimental to the child's well-being.  We agree.

A.  *Guiding Principles*

If a dependent child would be at substantial risk of physical or emotional harm if left in parental custody and there is a noncustodial and nonoffending parent who is willing to assume custody, the juvenile court must place the child with the noncustodial parent unless it finds that doing so would be "detrimental to the safety, protection, or physical or emotional well-being of the child."  (§ 361.2, subds. (a) & (b)(1); accord, *In re Maya L.* (2014) 232 Cal.App.4th 81, 97–99.)

"A parent's right to care, custody and management of a child is a fundamental liberty interest protected by the federal Constitution that will

---

[3]    The trial court stated it relied only partially on the evidence we describe, but the trial court never expanded on what other factors it considered in denying father custody of B.A.  We cannot here invoke the doctrine of implied findings where we cannot conclude on this record the trial court properly considered the requirements of section 361.2, subdivision (a). (See *In re Abram L.* (2013) 219 Cal.App.4th 452, 461 (*Abram L.*).)

5

not be disturbed except in extreme cases where a parent acts in a manner incompatible with parenthood." (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1828.) "[T]o comport with the requirements of the due process clause, a finding of detriment pursuant to section 361.2, subdivision (a) must be made by clear and convincing evidence." (*Id.* at p. 1829.) "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262.) The Agency, as the party opposing placement with the noncustodial parent, bears the burden of proof to show detriment under section 361.2, subdivision (a). (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1402 (*C.M.*).)

On appeal, we review the court's decision for substantial evidence, keeping in mind that the juvenile court is required to make a dispositional finding by clear and convincing evidence. (*In re Noe F.* (2013) 213 Cal.App.4th 358, 367.) The question before us is " 'whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' [Citation.] We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*In re M.V.* (2022) 78 Cal.App.5th 944, 960.) In conducting our review, we do not reweigh evidence or reassess the credibility of witnesses; instead, we review the record for evidence of reasonable, credible and solid value such that a reasonable trier of fact could find as the juvenile court did. (*In re K.B.* (2015) 239 Cal.App.4th 972, 979 (*K.B*).)

B. *Detriment Finding*

We conclude the record lacks substantial evidence supporting the juvenile court's finding that placement with Father would be detrimental to B.A. Under the plain language of section 361.2, subdivision (a), once B.A. was removed from Mother's custody, the juvenile court was required to place him with Father unless the court found clear and convincing evidence that Father could not properly care for the child. (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 695 (*Isayah C.*).)

The record shows that the juvenile court found detriment by relying entirely on Father's history of substance abuse, a single missed drug test, and the lack of information about his ongoing drug testing. The court cited Father's admissions of past drug use and a positive drug test two months earlier. Admission of a history of substance abuse, without more, is insufficient to find detriment, especially where Father's substance abuse did not form the basis of the dependency court's jurisdiction. (See *Abram L., supra*, 219 Cal.App.4th at p. 463 [allegations of the father's history of substance abuse did not support a finding of detriment where the juvenile court dismissed those allegations from the petition and there was no evidence the father used illicit drugs or drank an inappropriate amount of alcohol at any time after the dependency proceedings commenced]; see *C.M., supra*, 232 Cal.App.4th at pp. 1402–1403 [noncustodial parent's alleged past alcohol abuse did not support a detriment finding where the underlying petition contained no substance abuse allegations against the noncustodial parent and there was no evidence of any recent, much less current, domestic violence by noncustodial parent, and other parent's mental health issues made her a questionable reporter on the issue of noncustodial parent's alcohol use].)

Additionally, Father's admission that he participates in a treatment program for substance abuse was insufficient to support a detriment finding.

Section 361.2 states that a noncustodial parent's enrollment in a certified substance abuse treatment facility "shall not be, for that reason alone, prima facie evidence that placement with that parent would be detrimental." (§ 361.2, subd. (a).) Thus, Father's history of substance abuse use and participation in a treatment facility alone are insufficient to conclude placement with Father would be detrimental to B.A.

We find instructive a recent Supreme Court case holding that substance abuse without more was insufficient to support jurisdiction in a dependency matter. (*In re N.R.* (2023) 15 Cal.5th 520, 531.) Rather, in *In re N.R.* our high court described that substance abuse must render a parent unable to care for their child and "either cause the child to suffer serious physical harm or illness or place the child at substantial risk of suffering such harm or illness." (*Id.* at p. 531.) Here, the parties do not challenge jurisdiction on appeal; however, jurisdictional findings are made under a preponderance of the evidence standard. (*Ibid.*) In contrast, a finding of detriment under section 361.2 is assessed under the higher clear and convincing evidence standard. (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 295.) If evidence of substance abuse which leads to the problems described by *In re N.R.* is not enough for an exercise of dependency jurisdiction under its lower standard of proof, it certainly would not be sufficient to establish detriment under the higher standard of proof here.

In addition to substance abuse, the trial court here also relied on a lack of information about the frequency and recency of Father's positive drug tests in finding detriment. The court found the Agency "attempt[ed] to gather current information regarding substance use" but was unable to do so because Father missed a drug test. However, the *lack of evidence* about the recency and outcome of drug testing is insufficient for the Agency to meet its

heightened burden.  (See *In re John M.* (2006) 141 Cal.App.4th 1564, 1572 [explaining where the court lacked information it needed, the trial court should have continued proceedings to gather the data required to evaluate Father's suitability for placement pursuant to section 361.2].)  Importantly, Father, as the noncustodial parent, did not have to prove lack of detriment (*C.M., supra*, 232 Cal.App.4th at p. 1402); instead, the Agency bore the burden of showing placement with Father would be detrimental to B.A. (see *ibid.*).  Based on the evidence upon which the court relied, we conclude "substantial doubt" exists as to whether the Agency met its high burden.  (See *id.* at p. 1401.)

We observe also that the record does not show the Agency exercised due diligence to gather information about Father's drug use before claiming that placement with Father would be detrimental.  For example, in May, Father informed Agency of his participation in El Dorado program and that he submitted to drug testing related to enrollment in El Dorado, but Agency did not ask for a signed release of information form until August, despite having opportunities to get one earlier.  Also, the Agency scheduled a drug test within one day of requesting one; when Father missed the test, the record does not reflect that an opportunity to retest was provided.  While the juvenile court relied on the unavailability of information about Father's substance abuse testing in determining detriment, the record is unclear whether the court considered other evidence including reports from Father's relatives, the existence and welfare of siblings already in Father's custody, and familial support.  We are further hampered in our review because the trial court's ruling reflected only "part of the evidence the court relie[d] on" in making its decision.  With only a portion of the trial court's reasoning before us it is challenging to know what other factors weighed in the court's

9

determination. In making a finding of detriment, the court must weigh all relevant factors to determine if the child will suffer harm if placed in the custody of a nonoffending parent. (*Isayah C., supra*, 118 Cal.App.4th at p. 694.) It is the juvenile court that should consider these additional factors in the first instance. (See *K.B., supra*, 239 Cal.App.4th at p. 979.)

"California law presumes that a child ought to be with a parent rather than in the foster care system absent clear and convincing evidence that keeping the child with the parent would be detrimental to the child's safety, protection, or physical or emotional well-being." (*In re M.C.* (2023) 88 Cal.App.5th 137, 154.) On the record before us, we conclude there is no substantial evidence that would allow a trier of fact to find detriment under section 361.2, subdivision (a) by clear and convincing evidence.

DISPOSITION

Accordingly, the disposition order is reversed to the extent it made findings under section 361.2 that lacked substantial evidence. We remand the matter to the trial court with directions to: (1) vacate its dispositional findings under section 361.2 as to Father; (2) set a continued dispositional hearing; and (3) direct the Agency to prepare a supplemental disposition report to include any new developments. At the continued dispositional hearing, the court shall weigh all the relevant factors to determine whether clear and convincing evidence supports a finding of detriment. If not, the court is directed to place B.A. with Father as required under section 361.2, subdivision (a) and the court may consider options set forth under section 361.2, subdivision (b).[4]

RUBIN, J.

WE CONCUR:

BUCHANAN, Acting P. J.

CASTILLO, J.

---

[4] We offer no opinion as to how the court should rule on the new dispositional hearing.

11